UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| TAMMI L. GAGNON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:15-cv-273-DBH |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal challenges the administrative law judge's findings that two particular impairments were not severe, and contends that she failed to assign proper weight to the opinions of several treating medical providers. I recommend that the court vacate the commissioner's decision and remand the action for further proceedings.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2012, Finding 1, Record at 13; that she suffered from deep vein thrombosis, recurrent blood clots, obesity, anxiety,

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on December 16, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

depression, and history of drug abuse in early remission, impairments that were severe but which, considered separately or in combination, did not meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id.* at 13-14; that she had the residual functional capacity ("RFC") to perform sedentary work, except that she could only occasionally climb ladders, ropes, scaffolds, stairs, or ramps, could occasionally balance and crouch, could never kneel or crawl, could occasionally pull or push with her lower extremities, could occasionally interact with the public, and must be allowed to alternate positions at will, Finding 5, *id.* at 16; that she could not return to any past relevant work, Finding 6, *id.* at 21; that, considering her age (27 years old on her alleged disability onset date, May 5, 2011) education (at least high school), work experience, and RFC, and using the Medical-Vocational Rules in Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid") as a framework for decision-making, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 22; and that she, therefore, had not been disabled from May 5, 2011, through the date of the decision, January 30, 2014, Finding 11, *id.* at 23.  The Appeals Council declined to review the decision, *id.* at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I.   Discussion

### A.   Step 2 Issues

The plaintiff contends that the administrative law judge should have found her to be suffering from two additional severe impairments, cellulitis and iron deficiency anemia. Plaintiff's Statement of Errors ("Itemized Statement") (ECF No. 15) at 3-7. The administrative law judge said that "[t]he claimant's cellulitis condition is non-severe, as it is managed with treatment." Record at 14. She went on to list several discrete episodes of cellulitis and the resolution of each. *Id.* She ended with the following statement:   "Recent treatment notes, from November and

December 2013, show the claimant's symptoms are managed well with infusion treatments of antibiotics; therefore, they do not pose more than minimal limitations on her ability to perform work activity." *Id.*

With respect to the plaintiff's iron deficiency anemia, the administrative law judge said the following, in full:

> The claimant's anemia and B12 deficiency is also non-severe, as her symptoms are managed with injections and supplements (8F/17-21; 38F/1-2). The claimant testified that she now has a port, and treats for about 90 minutes of IV infusions, but also takes oral supplements. The claimant admitted that her symptoms have improved.

*Id.*

With respect to her anemia, the plaintiff asserts, without citation to the record, that it "is, in part, the result of conversion and absorption deficits resulting from her prior gastric bypass[.]" Itemized Statement at 6. She characterizes it as "cyclical in nature." *Id.* She contends that "[g]iven the number of treatments for her anemia that the Plaintiff has received during the course of this claim, this would also result in needing an accommodation for missed work that would effectively rule out regular employment." *Id.* She is "necessarily 'unavailable' for work" during twice-monthly 90-minute intravenous treatments. *Id.*

The plaintiff mentions only a record of such treatments from March through September of 2013, *id.*, which would not meet the 12-month requirement of 20 C.F.R. §§ 404.1509 and 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). On April 16, 2013, while the cited treatment was ongoing, the plaintiff's treating physician did not mention anemia as a medical condition that he was treating. Record at 1876. The plaintiff cites no medical evidence about the past frequency of her anemia, its likely future frequency, and the availability of twice-monthly intravenous

4

treatment at times other than during customary work hours.  She has not established the likelihood of a different outcome on her application should her anemia be held to be a severe impairment.

As to her cellulitis, the plaintiff argues that the administrative law judge was required "to recognize the impact each cellulitis infection has on [her] each time one occurs."  Itemized Statement at 4.  She emphasizes that she testified that each episode requires IV treatments that must be done at a clinic and last two and one-half hours.  *Id.*  She contends, again without citation to the record, that she would be required to be absent from work for two hours a day over a two week period for these treatments, and that, based on answers given by the vocational expert to her representative's questions, this would preclude all work.  *Id.* at 5.

The administrative law judge correctly observed that the medical professionals who treated the plaintiff's cellulitis considered it to be well managed with treatment.  Ordinarily, an impairment that is managed with treatment may not be considered severe for purposes of entitlement to Social Security benefits.  *E.g., Martinez-Lopez v. Colvin*, 54 F.Supp.3d 122, 133 (D. Mass. Oct. 22, 2014).  However, she ignored the plaintiff's testimony to the effect that each episode required two weeks of twice-daily IV infusions.  The plaintiff testified that she customarily reported for these sessions at 8 a.m. and 8 p.m., providing support for her implied assertion that these treatments could not be scheduled outside customary work hours.[2]

The evidence supports the plaintiff's assertion that she suffered from three episodes of cellulitis in 2012, before her date last insured, and two episodes in 2013.  Itemized Statement at 3-4; Record at 1202, 1579, 1729, 1844-46, 2289-95.  These episodes recurred within a 12-month period. The plaintiff cites no evidence that such episodes were expected to occur again in the

---

[2] The plaintiff relies on testimony of the vocational expert at the hearing to support her contention that these treatments would preclude any of the jobs she had otherwise identified as being available to a person with the plaintiff's RFC. Itemized Statement at 5.  *See* Record at 64.

future, but, based on this evidence, the plaintiff has shown both that her cellulitis was severe within the meaning of the Step 2 definition and that, if the effects of its treatment were considered and not contradicted, it would have changed the outcome of her claims. Remand is appropriate on this basis.

## B. Dr. Ijaz

The plaintiff contends that the administrative law judge failed to explain adequately her reasons for assigning "little weight" to the opinions of Ambreen Ijaz, M.D., her treating hematologist. Itemized Statement at 7-16. Specifically, she challenges what she construes as a "suggestion that Dr. Ijaz's opinion was either fabricated . . . or was the result of undue pressure by the Plaintiff[,]" *id*. at 9, and asserts that her own testimony at the hearing was not sufficient to support the rejection of "well-supported, consistent opinions of a treating specialist[.]" *Id*. at 11.

The administrative law judge reviewed Dr. Ijaz's records in her decision. Record at 18, 20. The plaintiff focuses on the following paragraph of that decision:

> The opinion of Dr. Ijaz is accorded little weight (33F). Dr. Ijaz, who has treated the claimant since August 25, 2011, seeing her every 3-6 months during that period, believes that the claimant would be limited to less than sedentary work, as she is "unable to tolerate the prolonged standing or sitting needed for either light or sedentary work on a regular and sustained basis" secondary to her recurrent blood clots, deep vein thrombosis[,] s well as her depression and high blood pressure. Dr. Ijaz notes that the claimant's many medications cause side effects including drowsiness, forgetfulness, weight gain, difficulty with concentration, reduced energy and changes in appetite. The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality, which should be mentioned, is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

Record at 20.

6

While the reference to Dr. Ijaz's possible motivation was not the only reason for the weight assigned to it by the administrative law judge, Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 17) at 13, it infects her analysis.  The plaintiff casts some aspersions of her own, asserting that the administrative law judge's conclusions about Dr. Ijaz's opinions, "may be based on an apparent misunderstanding of the Plaintiff's deep vein thrombosis, and . . . the postphlebotic syndrome in her legs."  Itemized Statement at 11.  I do not consider this characterization in my review of the administrative law judge's conclusions.

The plaintiff follows this assertion with a discussion of record evidence that she contends would support Dr. Ijaz's stated limitations.  *Id.* at 12-15.  I do not address each of these items because the legal test on this appeal is not whether there is medical evidence in the record that would support a conclusion other than that reached by the administrative law judge, but rather whether substantial evidence supports that conclusion.  *Caiazzo v. Colvin*, No. 2:13-cv-00155-JAW, 2014 WL 1569529, at *2 (D. Me. Apr. 17, 2014).

The administrative law judge's discussion of the evidence identifies additional evidence, beyond her statement quoted above, that supports her decision to assign little weight to Dr. Ijaz's opinions.  Record at 18-21.  To the extent that the plaintiff presses a contention that Dr. Ijaz's opinion was entitled to controlling weight, its inconsistency with substantial medical evidence in the record requires rejection of that argument.  *See, e.g., Bowker v. Commissioner, Soc. Sec. Admin.*, Civil No. 2:13-CV-122-DBH, 2014 WL 220733, at *3 (D. Me. Jan. 21, 2014).

Nevertheless, the administrative law judge's statement, quoted above, Record at 20, would have been insufficient to support her rejection of Dr. Ijaz's opinion under 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) and Social Security Ruling 96-02p.  Furthermore, in this particular case, the additional evidence cited by the administrative law judge does not overcome

her bias, unsupported by record references, displayed in her speculative remark about Dr. Ijaz's possible motivation. *See Lester v Chater,* 81 F.3d 821, 832 (9th Cir. 1996) (in absence of evidence of actual improprieties, administrative law judge may not assume that treating physicians "routinely lie in order to help their patients collect disability benefits" (citation omitted); reversing judgment for commissioner). *See also Lloyd v. Colvin*, No. CV-13-3030-FVS, 2014 WL 1922741, at *10 (E.D. Wash. May 14, 2014) (alleged advocacy by treating physician not legitimate reason to discredit that opinion). For this reason too, the plaintiff is entitled to remand.

## C.  Opinions of Dr. Agee, Dr. Rasmussen, and Ms. Shaw-Roberge

I address the plaintiff's remaining argument for the benefit of the parties on remand, should the court adopt my recommended decision.

In a brief discussion, the plaintiff concludes her itemized statement with a contention that she is entitled to remand because the administrative law judge failed to state what weight she gave to the opinions of each of Dr. Agee, Dr. Rasmussen, and Ms. Shaw-Roberge. Itemized Statement at 16-17. John Agee, Ph.D., is mentioned only in the heading of this section of the itemized statement, and the lack of any developed argument with respect to his opinion or opinions means that any claim to remand based on the administrative law judge's treatment of Dr. Agee's opinions must be deemed waived. *LaFlamme v. Colvin*, Civil No. 1:14-cv-57-DBH, 2015 WL 519422, at *7 (D. Me. Feb. 6, 2015).[3]

The plaintiff complains that the administrative law judge "failed to mention the opinions of Counselor Shaw-Roberge, and failed to evaluate or explain the weight she accorded" to them, if any. Itemized Statement at 16. She specifically refers only to Shaw-Roberge's opinion that the

---

[3] The same is true of any argument based on the administrative law judge's treatment of the opinions of Miles Brookes, PMHNP-BC, which is mentioned only in the plaintiff's summary of her issues on appeal, Itemized Statement at 2, and not thereafter.

plaintiff's mental impairments cause "clinically significant distress and impairment in social, occupational [sic] and impairs this individual's ability to pursue some necessary tasks and impairs her ability to hold a significant job for any length of time." *Id.*

To the extent that Shaw-Roberge expresses an opinion that the plaintiff is "unemployable," Record at 2243, that opinion addresses an issue that is reserved to the commissioner, and any failure by the administrative law judge to address it can only be harmless error. *Johnson v. Colvin*, Civil No. 1:13-cv-406-DBH, 2014 WL 5394954, at *3-*4 (D. Me. Oct. 21, 2014). The administrative law judge discussed Shaw-Roberge as follows: "Recent treatment notes, dated 01/09/2014, from Roberta Shaw-Roberge, LCPC, the claimant's substance abuse counselor, indicate the claimant is doing well, lives in her own apartment, and is only 'mildly' aggressive, with moderate social limitations, and moderate anxiety (52F)." Record at 19. I do not reach the question of whether the administrative law judge was required to address Shaw-Roberge's opinions specifically and to give the reasons for her assessment of those opinions, because the only possible opinions in Shaw-Roberge's language quoted above that does not address the ultimate issue that is reserved to the commissioner are that the plaintiff would experience "significant distress and [social] impairment" and that her "ability to pursue some necessary tasks[,]" otherwise unspecified, would be impaired. *Id.* at 2243. These statements are simply too general to provide a basis for remand, even if the administrative law judge erred in failing to mention them. *See, e.g., Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013).

With respect to the opinions of Gary Rasmussen, Ph.D., the plaintiff asserts, Itemized Statement at 16-17, that the administrative law judge "failed to evaluate or explain the weight she accorded to" his conclusion that

> her ability to work cooperatively with supervisors, co-workers, and customers is likely [to] be compromised by the rather fragile nature of her affective disorder and

9

her memory and concentration problems.  Psychologically, she is not likely to be a reliable employee in terms of work productivity or work attendance.  She is not likely to maintain pace and persistence on the job.

Record at 1506-07.

The administrative law judge said the following about Dr. Rasmussen:

On 05/14/2012, Dr. Rasmussen, Ph[.]D[.], performed the claimant's consultative psychological examination (16F). . . . Dr. Rasmussen concluded (16F/4):

Despite any impairments noted and based upon these evaluative results, the claimant appears to be able to perform such job related psychological skills as communication, understanding, and following instructions.  She has deficits in her capacity to concentrate, and she exhibits short-term memory problems.  These are likely to negatively impact her ability to follow complex instructions.  She exhibited a range of well-developed social skills during the interview[.]

Record at 19-20 (italics omitted). The final sentence fragment in this passage, with the addition of the word "but" immediately precedes the portion of Dr. Rasmussen's opinions as set forth above and cited by the plaintiff.  The administrative law judge also cites Dr. Rasmussen's report in her discussion of the plaintiff's mental impairments.  *Id*. at 15 (reference to Exhibit 16F).

For the reasons previously stated, to the extent that Dr. Rasmussen's statement upon which the plaintiff relies addresses the issue of employability reserved to the commissioner, any failure to evaluate it as required is harmless.  As to the remainder of the cited passage, the problem for the plaintiff is that she does not suggest how an appropriate discussion of Dr. Rasmussen's opinions by the administrative law judge would necessarily change the outcome of her claim.  In addition, Dr. Rasmussen was not a treating medical professional; he saw the plaintiff once, for a psychological consultation.  Record at 1503.  As the defendant points out, Opposition at 18, the two state-agency psychologists whose reports are in the record, did address Dr. Rasmussen's opinions, and gave them lesser persuasive value because they relied heavily on the plaintiff's subjective reports and were inconsistent with other evidence in the record.  Record at 79, 94, 114,

10

132.   The administrative law judge did explicitly discuss the reports of the state-agency psychologists.  Record at 21.  On the showing made, that is sufficient.  The plaintiff is not entitled to remand on this basis.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case remanded for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 13th day of January, 2016.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge